Charlotte S. DUKE

v.

Gordon M. DUKE.

Nos. 84–537–Appeal, 85–366–M.P. and 85–390–Appeal.

Supreme Court of Rhode Island.

June 11, 1986.

Howard I. Lipsey, Providence, for plaintiff.

Gordon Duke, pro se.

OPINION

BEVILACQUA, Chief Justice.

These are consolidated appeals taken by the plaintiff wife (No. 84–537–A.) and the defendant husband (No. 85–390–A.) from a Family Court decree awarding joint custody with fifty-fifty physical possession of the two minor children to the parties and exclusive use of the marital domicile to the defendant. A petition for certiorari was also filed by the defendant (No. 85–366–M.P.) to review a subsequent Family Court decree awarding the plaintiff $200 for counsel fees.

The pertinent facts are as follows. The plaintiff and defendant were married on July 20, 1980, and have two minor children, L'Oreal and Natalia. As a result of numerous marital problems, plaintiff filed a petition for divorce on November 17, 1982, on the grounds of extreme cruelty and irreconcilable differences.[1] On January 16,

---

1. On July 1, 1983, plaintiff was awarded temporary custody of the minor children and defendant was granted reasonable visitation rights. The defendant was also restrained from annoying, molesting, and harassing plaintiff at home, at work, on the streets or elsewhere. Subsequently, defendant was found in willful contempt for taking the children

1984, defendant counterclaimed for divorce on grounds of irreconcilable differences.

On December 19, 1983, plaintiff was awarded custody of the two minor children and defendant was granted visitation two days per week from 9 a.m. the first day to 6 p.m. the second day and was restrained from taking the children out of Rhode Island. Subsequently in June 1984 after hearings the trial justice granted the parties' petitions for divorce on the grounds of irreconcilable differences and awarded joint custody of the minor children to the parties with physical possession as close to 50 percent of the time as possible, accommodating defendant's work schedule.[2] Neither counsel fees nor alimony was awarded to either party. The defendant was ordered to pay plaintiff $5,000 for her interest in the marital domicile and a $50–per-week child-support obligation was continued in the form of a lien against defendant's interest in the house.[3] Both parties filed notices of appeal from the interlocutory decree of July 9, 1984.[4]

Subsequently, on May 24, 1985, an order was entered following hearings on May 9 and 10, 1985, reaffirming the December 19, 1983 order awarding custody of the minor children to plaintiff and granting defendant visitation rights in accordance with his work schedule. The trial justice also ordered defendant to pay plaintiff's attorney a fee of $200, the money to be obtained from his income-tax-rebate check. The trial justice imposed a further $50–per-week child-support obligation upon defendant based upon his wages from the Providence fire department to be paid in the form of a lien against defendant's interest in the marital domicile.[5] The defendant appealed

from this decree and also filed a petition for certiorari that was granted on February 20, 1986. The appeals were consolidated for review by this court upon defendant's motion that was granted on October 30, 1985.

The issues raised by the parties can be summarized as follows: (1) whether the trial justice abused his discretion in his decision of July 9, 1984, awarding joint custody with fifty-fifty physical possession of the minor children to the parties; (2) whether the trial justice abused his discretion in his decision of May 24, 1985, awarding custody of the children to plaintiff with limited visitation rights to defendant; (3) whether the trial justice erred in ordering defendant to pay plaintiff's attorney a counsel fee of $200; (4) whether the trial justice erred in denying plaintiff alimony and counsel fees in the decree of July 9, 1984; (5) whether the trial justice erred in imposing an additional $50–per-week support order against defendant; and (6) whether the trial justice erred in granting defendant exclusive use and possession of the marital domicile without considering the interest of plaintiff's mother whose name was on the deed to the property. Since the first two questions regard the issue of custody, they will be discussed together.

I

The defendant contends in both his appeals that the trial justice erred in denying him sole custody of the two minor children. He argues that plaintiff should have neither sole custody nor joint custody of the children because such an award would not

out of Rhode Island and received a one-year suspended sentence at the Adult Correctional Institutions.

**2.** The defendant is a firefighter for the city of Providence and works for four days and then has the next four days off.

**3.** On January 26, 1984, a lien was placed on defendant's equitable interest in the marital domicile in the amount of $50 per week

for plaintiff's support at the request of the Department of Social and Rehabilitative Services (SRS).

**4.** The defendant's notice of appeal filed May 22, 1985, was dismissed for untimeliness on July 30, 1985.

**5.** This was in addition to the lien that was previously imposed by the court at the request of SRS in January 1984.

be in the best interest of the children. The plaintiff does not address this issue in any of her briefs, claiming that the issue is moot. However, we consider the issue to be properly before this court.[6] Therefore, we must decide whether the order of July 9, 1984, awarding joint custody of the minor children to the parties or the order of May 24, 1985, awarding custody to plaintiff with limited visitation rights to defendant is the appropriate disposition under the law.

On May 9 and 10, 1985, after hearing conflicting testimony from the parties regarding the problems they had been experiencing in dealing with visitation, the trial justice stated:

"The Court: I have never, ever seen an Order of joint custody with equal visitation rights.

\* \* \* \* \* \*

"The Court: Where it worked.

\* \* \* \* \* \*

"The Court: Joint custody simply will not work because you people will be at loggerheads over a lot of things, education, need to send children to school, clothing, transportation, you're fifteen (15) minutes late, half hour early. You know, those kind of things are not conducive to a valid joint custody order. So this will not work."

Relying on the evidence the trial justice affirmed the previous order granting custody to plaintiff with weekly visitation to defendant from 9 a.m. the first day to 6 p.m. the second day. The trial justice found that this arrangement appropriately addressed the reality of the situation and was in the best interest of the children.

This court has held that where a trial justice fails to expressly articulate findings of fact we shall not refuse to accord the decision the persuasive force usually accorded such decisions on review, for the

reason that implicit in a decision are such findings of fact necessary to support it. *Kenney v. Hickey*, 486 A.2d 1079, 1082–83 (R.I. 1985) (citing *Lannon v. Lannon*, 86 R.I. 451, 454, 136 A.2d 608, 609 (1957)). In the instant case although the trial justice did not make specific findings of fact, the record indicates that he considered the conduct of the parties in determining what would be a suitable arrangement for the children.

■ We hold therefore that the trial justice did not abuse his discretion in affirming the previous order of July 9, 1984, thereby awarding plaintiff sole custody of the children. The record reveals that the parties have been unable to maintain an amicable relationship for the sake of the children, and therefore an order of joint custody would be detrimental to the well-being of the children. There is ample evidence to support the trial justice's decision and we will not disturb his decision absent the record showing that he overlooked or misconceived evidence or was otherwise clearly wrong. *Conley v. Conley*, 508 A.2d 676 (R.I.1986); *Sattari v. Sattari*, 503 A.2d 125 (R.I. 1986); *Casey v. Casey*, 494 A.2d 80 (R.I. 1985).

II

■ The next issue raised by defendant is whether the trial justice erred in awarding plaintiff's counsel a $200 fee. The defendant contends that he is without funds sufficient to pay such a fee. He testified that although he grosses approximately $430 per week, his take-home pay is only $232 per week. The defendant also stated that he was expecting a refund from his income taxes in the amount of $3,000 and that he has a firefighter's pension fund from which he often borrows money. Relying on these facts the trial justice concluded:

1985, stated that defendant's motion to stay the June 14 order was therefore moot; however, this was not a determination that the issue of custody was moot.

6. The order of June 14, 1984, incorporated in the interlocutory decree of July 9, 1984, was automatically stayed on plaintiff's appeal. This court's order of October 30,

"You're (defendant) getting $3,000 back. You got three months mortgage. That's $2,400. That leaves you with $600 left. Give him (plaintiff's attorney) $200."

General Laws 1956 (1981 Reenactment) § 15–5–16, as amended by P.L. 1984, ch. 79, § 1, sets forth the criteria that the court must consider in making an award of counsel fees.[7] We have also repeatedly held that "before the trial justice is warranted in making such an award [of counsel fees], he must find that the [spouse required to pay] had a sufficient financial ability to pay such fees and that the [spouse seeking counsel fees] is without property of [his or her] own available for that purpose." *Tarro v. Tarro*, 485 A.2d 558, 564 (R.I. 1984) (quoting *Paradiso v. Paradiso*, 122 R.I. 1, 3, 404 A.2d 60, 61 (1979)).

The record reveals that the trial justice considered the conduct and the occupation of the parties, the amount and source of income,[8] and the liabilities and needs of each of the parties. The trial justice also noted that defendant had been awarded sole use and possession of the marital domicile, which could be used to generate additional funds. Upon review of the record it is clear that the trial justice's decision in awarding plaintiff counsel fees of $200 was based on substantial evidence. Therefore, we hold that the trial justice did not err in his decision.[9]

### III

In plaintiff's appeal from the interlocutory decree of June 9, 1984, she argues that the trial justice erred in denying her alimony and counsel fees. In making such an award, the trial justice must consider the factors enumerated in § 15–5–16 as discussed above. *See Fricke v. Fricke*, 491 A.2d 990 (R.I. 1985). In the instant case the trial justice stated:

"[T]he Court has considered both the Plaintiff and Defendant counterclaimant, taking into consideration four years of marriage. The Court finds both parties contributed equally to the breakdown of this marriage. Therefore, the conduct of the parties is such that both are responsible. Both are in good health. Both are rather young people. Both are employable. The court has mentioned the income of Plaintiff and Defendant counterclaimant * * *, dealt with their skills and employability. The Court has looked at liability and needs. The Court finds neither party is entitled to alimony."

Similarly, as to counsel fees the court stated:

"Both parties will be responsible for their own attorney's fees. As I said jointly responsible for this matter being here, and the breakdown of the marriage, and they can each pay their own fees for this matter."

The record clearly indicates that the trial justice made the necessary findings of fact under the statute. With regard to awarding alimony this court has stated that "[i]t is not the function of a trial justice in divorce cases to equalize the earning power of divorced parties. Rather, the function is to consider all of the elements in determin-

7. General Laws 1956 (1981 Reenactment) § 15–5–16, as amended by P.L. 1984, ch. 79, § 1 provides in pertinent part:
   "Alimony and counsel fees—Custody of children.—In granting any petition for divorce, divorce from bed and board, or relief without the commencement of divorce proceedings, the family court may order either of the parties to pay alimony or counsel fees or both to the other. In determining the amount of alimony or counsel fees, if any, to be paid, the court after hearing the witnesses, if any, of each party, shall consider the length of the marriage; the conduct of the parties during the marriage; the health, age, sta-

tion, occupation, amount and source of income, vocational skills and employability of the parties; and the state and the liabilities and needs of each of the parties."

8. The court found that plaintiff made $70 per week (excluding tips) working as a hairdresser and that she received welfare benefits in the amount of $384 per month.

9. Although in the interlocutory decree of July 9, 1984, plaintiff was denied counsel fees, the trial justice in that matter was relying upon the circumstances existing in June 1984.

whether an award * * * should be made." *Cok v. Cok,* 479 A.2d 1184, 1188 (R.I. 1984). The same factors apply to the award of counsel fees. Since the trial justice made his decision in accordance with § 15–5–16, we hold that the trial justice did not err in denying plaintiff alimony and counsel fees.

### IV

The next issue that defendant raises on appeal is whether the trial justice erred in imposing an additional $50–per–week child-support order against him in the form of a lien on the marital domicile.

Section 15–5–16.2, as amended by P.L. 1984, ch. 281, § 2,[10] provides the criteria that the trial court must consider in ordering a party to pay child support. The children in this case are two young girls, ages four and five, without any financial resources of their own. The trial justice considered the financial resources and needs of the parties and found that defendant was capable of paying the designated amount since he would not be required to pay in cash. Rather, the amount would be charged against his interest in the marital domicile. Moreover, the court considered defendant's responsibility to support his children as paramount to any of his other debts. The court stated:

"You [defendant] don't improve your situation by your outward manifestations of what you do by not supporting [the children], and paying a mortgage of $800. * * * [Y]ou can best demonstrate

your concern for these kids by paying support for them. * * * You can afford to live in less expensive quarters than that and use $400 a month that you save by paying $100 a week for support."

■ There is nothing in the record that indicates that the trial justice overlooked or misconceived evidence or was otherwise clearly wrong. *Conley v. Conley,* 508 A.2d 676 (R.I.1986); *Sattari v. Sattari,* 503 A.2d 125 (R.I. 1986); *Casey v. Casey,* 494 A.2d 80 (R.I. 1985). This court has stated that "unless it is demonstrated that the trial justice was clearly wrong in the exercise of discretion, we shall not disturb any findings of fact regarding the orders of child support * * *." *Brierly v. Brierly,* 431 A.2d 410, 415 (R.I. 1981). Therefore, we hold that the trial justice did not err in imposing an additional $50–per–week child-support order against defendant.

### V

■ The final issue raised by plaintiff is whether the trial justice erred in making a disposition of the marital domicile without joining or notifying plaintiff's mother of the proceeding.[11] We hold that there was no error.

Section 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1, requires the trial justice to consider a number of factors before making an assignment of property to either the husband or wife.[12]

---

**10.** Section 15–5–16.2, as amended by P.L. 1984, ch. 281, § 2 provides in pertinent part:
"Child support.—In a proceeding for divorce, divorce from bed and board or a miscellaneous petition without the filing of divorce proceedings, or child support, the court may order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for his support after considering all relevant factors including, but not limited to:
(1) the financial resources of the child;
(2) the financial resources of the custodial parent;
(3) the standard of living the child would have enjoyed had the marriage not been dissolved;
(4) the physical and emotional condition of the child and his educational needs; and

(5) the financial resources and needs of the non-custodial parent. "

**11.** The plaintiff's mother's name was put on the deed to the marital domicile in order for the parties to obtain bank approval of their loan. Both parties testified that they considered the presence of plaintiff's mother's name on the deed "a [mere] convenience." Therefore, plaintiff cannot now argue that her mother had a property interest sufficient to warrant representation in this matter.

**12.** Section 15–5–16.1, as amended by P.L. 1982, ch. 403, § 1, provides in part:
"Assignment of property.—In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce,

The trial justice awarded defendant exclusive use, possession and title to the marital domicile and ordered him to pay $5,000 to plaintiff for her interest therein. In making his determination, the trial justice specifically considered the short length of the marriage, the contribution of the parties, plaintiff's role as a homemaker and mother, and defendant's contribution as a homemaker. The trial justice was also cognizant of the fact that the parties purchased the house with a downpayment of $12,000—$3,000 was contributed by plaintiff's mother and the remaining $9,000 came from the proceeds of the sale of a house owned by defendant and his mother before he was married. The parties subsequently reimbursed plaintiff's mother in the amount of $2,000 and retained the other $1,000 as a gift.

The record indicates that the trial justice made the necessary findings pursuant to § 15–5–16.1. As stated earlier with regard to the issues of alimony and child custody and support, this court will not disturb the findings of the trial justice unless there is

evidence that he was clearly wrong. *Conley v. Conley,* 508 A.2d 676 (R.I.1986); *Sattari v. Sattari,* 503 A.2d 125 (R.I. 1986); *Casey v. Casey,* 494 A.2d 80 (R.I. 1985). We therefore hold that the trial justice properly awarded the marital domicile to the defendant.

For the reasons hereto stated, the plaintiff wife's appeal (No. 84–537–A.) is denied and dismissed, the defendant husband's appeal (No. 85–390–A.) is denied and dismissed, and the judgments appealed from are affirmed. The defendant husband's petition for certiorari (No. 85–366–M.P.) is denied and dismissed, the writ heretofore issued is quashed, and the cases are remanded to the Family Court for further proceedings consistent with this opinion.

the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be so assigned, the court after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates, and the contribution and services of either party as a home-

maker. The court may not assign property or an interest therein held in the name of one of the parties if said property was held by said party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during or after, the term of the marriage."